THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* GILBERT PARODY, Appellant.

Fourth Department, June 30, 1936.

*Donald A. Wiltse,* for the appellant.

*Howard B. Donaldson, District Attorney,* for the respondent.

SEARS, P. J. The sole question presented upon this appeal is whether the defendant killed, that is, caused the death of George Lavanway within the meaning of the sections of the Penal Law defining manslaughter in the second degree (§§ 1052 and 1042).

On the 14th day of November, 1935, George C. Lavanway was standing behind a small delivery truck which was parked on the right-hand side of a street in the city of Watertown. The defendant

was driving a motor car. There is an abundance of evidence that he was drunk. He was driving near the center of the street, going in the same direction that Lavanway's truck was faced. The defendant's car suddenly diverted from its straight course to its right and ran into Lavanway and into the rear of Lavanway's truck. The defendant's car seemed to bound back after the collision and then stopped. The defendant got out, abandoned the car he was driving, staggered across the street and disappeared. Later that night he surrendered himself to the police and at the police station said that he did not remember having had an accident and that " the next he remembered " he was home in bed. About midnight he awoke and was told that the police were looking for him and then went to the police station and surrendered. There was thus ample evidence to establish reckless and culpable negligence.

The accident broke both legs of Lavanway above the knees. There was a compound fracture of each femur, that is, the flesh was broken to the surface. There were hemorrhages. There was great traumatic shock. The surgeon in charge, Dr. Cooper, was unable to bring the segments of the bones into apposition. He had as a consultant Dr. Calkins. Repeated efforts from time to time were made to bring the ends of the bones together. About four weeks after the accident, that is, on the thirteenth day of December, with the injured man's consent, operations were performed by Drs. Cooper and Calkins on the two legs. Before performing the operations an examination of the patient was made and the doctors determined that the traumatic shock had so far subsided as to make the operations safe. The operations were done simultaneously, one surgeon operating on one leg, the other on the other. The operations were what are called open operations. Incisions were made and pieces of the tibia, the larger bone in the lower leg, about four inches in length having been removed were fitted into grooves in the upper and lower segments of the respective femurs. In this way the broken parts of the femurs were brought into proper conjunction. The operations were properly performed, so far as appears, and in good medical and surgical practice were proper operations to perform. Nevertheless, four hours after the operations were performed, Lavanway died. There was no malpractice on the part of the physicians, none is suggested. Death resulted from surgical shock, immediately, added to the traumatic shock, as immediate cause. One surgeon testified that they, the surgeons, were mistaken in their belief that the traumatic shock had subsided to such an extent that Lavanway could survive the operations. The operations were not performed to save life,

but to set the bones so that the man might again be able to walk. Both surgeons testified that had Lavanway not been operated upon, he would not have died from the injuries. It is on this opinion of the surgeons, namely, that Lavanway would not have died had he not been operated upon, that the defendant's argument upon this appeal is principally based. The question that the defendant submits to us on this appeal is this: Where a wound is not mortal nor dangerous to life, but is destructive of an important bodily function, and an operation is performed to restore the bodily function and death results from surgical shock added to the existing traumatic shock of the original wound, does the person causing the wound also cause the death within the meaning of the sections of the Penal Law to which reference is made above? We have neither been referred to, nor have we found any case exactly in point, except, perhaps, *Regina* v. *Davis* (15 Cox Crim. Cas. 174). The general subject is discussed in *People* v. *Kane* (213 N. Y. 260). There Chief Judge WILLARD BARTLETT, writing for the court, said: " If a felonious assault is operative as a cause of death, the causal co-operation of erroneous surgical or medical treatment does not relieve the assailant from liability for the homicide. It is only where the death is solely attributable to the secondary agency, and not at all induced by the primary one, that its intervention constitutes a defense." That is not the precise case here, but it approaches it.

The wound here involved was not a mortal wound. It was not at the time of the operation dangerous to life. It was determined in an early English case, (1662) (*Rew's Case*, Kelyng, J. 26), followed in *Regina* v. *Holland* (2 Moo. & Rob. 351), referred to in Halsbury's Laws of England (9 Halsbury [2d ed.], 429) and cited in *Commonwealth* v. *Hackett* (2 Allen, 136), that the chain of causation is not broken by carelessness on the part of the wounded person or refusal to allow an operation on the part of the injured person. These authorities are mentioned in *People* v. *Kane* (*supra*). There would seem to be much more reason for finding a break in the chain of causation where the injured person himself failed to co-operate in treatment and care than where physicians or surgeons carefully and properly intervened. If we look at the case as presenting the conventional question of natural and probable consequences, we must conclude that the intervention of surgeons to set a broken bone was foreseeable, even though the particular character of the surgical operation may not have been; and the consequences of such operation, whatever they may be, would, in our opinion, fall within the scope of the natural and probable consequences of the wound.

It is not material in considering this matter that death was a fortuitous circumstance. The criminal act which the statute condemns is the recklessness and high degree of carelessness shown. The act which caused the wound would in a sense be as blameworthy whether or not death resulted to the victim; the law has, however, defined crimes and fixed degrees of punishment presumably for social reasons, based upon the seriousness of the consequences. The wrong of the defendant caused the physical injuries which the victim of the wrong originally suffered. An innocent act in the reasonable hope of restoring the important function of walking resulted immediately in the victim's death. The shock of the original injury contributed. It cannot be said as matter of law that death resulted solely from the surgeons' operations. The jury was justified in determining that the causal connection between the injury and death was established by the evidence.

The conviction should, therefore, be affirmed.

All concur. Present — SEARS, P. J., TAYLOR, EDGCOMB, THOMPSON and CROSBY, JJ.

Judgment of conviction affirmed.