THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* WILLIAM L. PINCKNEY, Respondent.

Second Department, February 7, 1972.

*Robert R. Meehan, District Attorney* (*Thomas E. Urell* of counsel), for appellant.

*Howard J. Diller* (*Diller & Schmukler* and *Michael Schwartz* of counsel), for respondent.

BENJAMIN, J. The question on this appeal is whether a Grand Jury could validly indict a defendant for manslaughter in the second degree and criminally negligent homicide where he sold a dangerous drug (heroin) to one Muthig and provided the instruments for its injection and thereby caused Muthig's death. The County Court held that these facts did not charge a crime.

The defendant was indicted by the Grand Jury of Rockland County and, upon arraignment, entered a plea of not guilty. The indictment charges him, under three counts, with the felonies of manslaughter in the second degree, criminally negligent homicide and criminally selling a dangerous drug in the third degree. The first count, for manslaughter in the second degree, alleges that the defendant recklessly caused Muthig's death on April 4, 1970, by selling heroin to Muthig, which the latter, with instruments furnished by the defendant, injected into his body, as a result of which he died on April 5, 1970. The second count, for criminally negligent homicide, alleges that the defendant wilfully, with criminal negligence, caused Muthig's death on April 4, 1970 by selling heroin to Muthig, which the latter, with instruments furnished by the defendant, injected into his body, as a result of which he died on April 5, 1970. The third count, for criminally selling a dangerous drug in the third degree, states that the defendant wilfully and knowingly sold heroin to Muthig on April 4, 1970, for which the defendant received $15.

The defendant demurred to the first two counts of the indictment on the ground that the facts stated do not constitute a crime (Code Crim. Pro., § 323, subd. 4). The County Court held the Penal Law does not contain any provision whereby the sale of a dangerous drug and the means of injecting it, thereby resulting in the death of the user, constitute the crime of manslaughter or criminally negligent homicide. The People contend that the facts as presented in these counts charge a crime and that the order should be reversed and the dismissed counts reinstated.

Section 125.15 of the Penal Law (manslaughter in the second degree) provides: " A person is guilty of manslaughter in the second degree when:

1. He recklessly causes the death of another person ".

Subdivision 3 of section 15.05 of the Penal Law defines "recklessly " as follows: "'A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a sub-

stantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation." Section 125.10 of the Penal Law (criminally negligent homicide) provides: "A person is guilty of criminally negligent homicide when, with criminal negligence, he causes the death of another person."

Subdivision 4 of section 15.05 of the Penal Law defines "criminal negligence" as follows: "A person acts with criminal negligence with respect to a result or to a circumstance described by a statute defining an offense when he fails to perceive a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation."

There are numerous decisions involving (1) illegal sales of wood alcohol (*People* v. *Licenziata,* 199 App. Div. 106; *People* v. *Voelker,* 220 App. Div. 528; *People* v. *Haber,* 221 App. Div. 150) and (2) illegal use or sale of implements or drugs for the purpose of committing an abortion (*People* v. *Gordon,* 258 App. Div. 983; *People* v. *McGonegal,* 136 N. Y. 62; *People* v. *Williams,* 260 App. Div. 1024, affd. 285 N. Y. 728; *People* v. *Chester,* 179 Misc. 864). Wood alcohol is by its very nature poisonous and the obvious result of its use, death, was known to the seller at the time of sale in *People* v. *Licenziata* (*supra*) and *People* v. *Voelker* (*supra*). Although it is a matter of common knowledge that the use of heroin can result in death, it is also a known fact that an injection of heroin into the body does not generally cause death. The homicide cases involving a sale or use of an illegal drug or instrument for the purpose of causing an abortion were prosecutions, as pointed out in the opinion below, pursuant to express statutory provisions (former Penal Law, § 1050; Penal Law, § 125.15, subd. 2). There are no provisions contained in the present Penal Law which set forth that the illegal sale of a dangerous drug which results in death to the user thereof constitutes manslaughter or criminally negligent homicide.

*People* v. *Cline* (270 Cal. App. 2d 328, Ann. 32 ALR 3d 582 [1969]) applied the felony murder doctrine as the basis for a homicide prosecution against a seller of dangerous drugs where death ensued from the use thereof. The court said: "The defendant committed the felony of furnishing a restricted dangerous drug without a prescription, an act which was inherently

dangerous to human life, directly and proximately causing the death of Bragg. Therefore, the defendant was properly found guilty of murder in the second degree."

A California case involving death from an injection of heroin which was not a felony murder prosecution is *People* v. *Hopkins* (101 Cal. App. 2d 704 ]1951]), where it appeared that the defendant had furnished heroin and, after taking an injection himself, held the decedent's arm with a handkerchief tourniquet, facilitating the taking of an injection by the deceased, who died soon after the injection from narcotic poisoning. The court held, upon the State's appeal from the dismissal of an indictment for manslaughter, that the trial court had erred in granting the motion to dismiss; and found that there was reasonable and probable cause for the Grand Jury to return a true bill. The court said (p. 707) that in order to charge the defendant with manslaughter it was not necessary for the testimony before the Grand Jury to show that he had injected the heroin and that, if he had merely stood by and kept a lookout for passersby, he could be charged as a principal.

We reject the holdings in the *Cline* and *Hopkins* cases (*supra*) because in our opinion the provisions of the Penal Law of New York do not make the act of selling a dangerous drug, which, when injected with instruments furnished by the seller of the drug, causes the death of the user, a homicide.

The District Attorney contends that the question of whether the act of the defendant in supplying the dangerous drug and the syringe constitutes the crime of manslaughter is one of fact (*People* v. *Brengard,* 265 N. Y. 100; *People* v. *Parody,* 248 App. Div. 269). He argues further that convictions for manslaughter have been brought under the former Penal Law section for many reasons, viz.: (collapsed coal pocket: *People* v. *Orzel,* 263 N. Y. 200; collapsed building: *People* v. *Polstein,* 184 App. Div. 260, affd. 226 N. Y. 593; *People* v. *Buddensieck,* 103 N. Y. 487; excessive blasting: *People* v. *Clemente,* 146 App. Div. 109, affd. 207 N. Y. 682; careless smoking: *People*. v. *Hoffman,* 162 Misc. 677).

This is a case of first impression in the State. As long ago as 1897, the State of New York has had legislation dealing with narcotics (see former Penal Law, § 1752). Since 1938 the State has attempted to control the sale, use and distribution of narcotic drugs with further legislation (see former Penal Law, §§ 1751–1753, inclusive). The present Penal Law contains article 220 — Dangerous Drug Offenses (§§ 220.00 — 220.46, inclusive). The Mental Hygiene Law since 1962 has contained provisions for the treatment of drug addiction (see art. 9 — Drug

Addiction). In 1969 the punishment to be imposed upon persons convicted of drug crimes was increased (see Penal Law, §§ 220.05 — 220.44, inclusive). However, the legislation did not include in an amendment or addition to the homicide provisions of the Penal Law any reference to death caused by the use of dangerous drugs. In our opinion, if the Legislature had intended to include homicide by the selling of dangerous drugs, it would have amended the sections in the Penal Law relating to homicide.

The counts of the indictment for manslaughter in the second degree and criminally negligent homicide were properly dismissed.

SHAPIRO, J. (concurring). The case relied on most heavily by the People in their brief on this appeal is *People* v. *Lieberman* (3 N Y 2d 649, revg. 3 A D 2d 915), in which the Court of Appeals reinstated an indictment charging the defendant Lieberman and another with manslaughter in the second degree in that they, " acting in concert and each aiding and abetting the other, * * * without a design to effect the death, in the heat of passion, struck and beat Rheinhold Peter Ulrickson with their fists causing him to sustain injuries as a result of which the said Rheinhold Peter Ulrickson died ". The Court of Appeals reviewed the evidence before the Grand Jury, which showed that the defendant had joined with three other boys in the wanton beating of a tramp and that one of the boys, other than the defendant, had struck the deceased, " a drunk ", who fell, struck his head on the edge of the sidewalk and died. This court had dismissed the indictment on the ground that the evidence before the Grand Jury failed to show any conspiracy to beat vagrants or that Lieberman had aided and abetted the boy who struck the decedent, in beating and striking him. In reversing, the Court of Appeals said that the evidence of the boys' search for tramps to beat up, their beating of another derelict and their striking the decedent pointed to the fact that the defendants had acted in concert, i.e., " *that each aided and abetted the others* in a plan or scheme to beat up ' tramps and vagrants ' which, when set in motion, proceeded without interruption until ' without a design to effect death, in the heat of passion, [the defendants] struck and beat ' '" the decedent so that he died, " after which this respondent and his companions walked calmly away " (p. 652; emphasis added; bracketed matter in original).

Under the Penal Law, aiding and abetting is covered by article 20 which is entitled " Parties to Offenses and Liability Through Accessorial Conduct ". Section 20.00 reads: " When one person engages in conduct which constitutes an offense, another person is criminally liable for such conduct when, acting

with the mental culpability required for the commission thereof, he solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct.''

The practice commentary on this section in McKinney's Consolidated Laws of New York (Book 39, Vol. 1, p. 32) notes that it is an explicit requirement for liability upon the part of the abettor that he act "with the mental culpability required for the commission" of the crime, a requirement not spelled out in the former Penal Law provision on this subject (§ 2). The commentary also includes that one who "indifferently but knowingly aids or facilitates the commission of a crime by providing another with means or opportunity for the commission thereof, without having any specific intent on his own part to commit or profit from the crime * * * quite clearly is not liable for the crime which he facilitates, for it cannot be truly said that he acts 'with the mental culpability required for the commission thereof.'" The crimes in which the defendant here was an aider and abettor were criminal possession of a dangerous drug in the sixth degree (Penal Law, § 220.05), criminally possessing a hypodermic instrument (Penal Law, § 220.45) and possibly loitering in the first degree (Penal Law, § 240.36). The death of the individual to whom the defendant sold the narcotic drug and to whom he lent the hypodermic needle to use the narcotic drug was not an act in which the defendant was either an accessory or aider and abettor; nor did he act in connection with the death "with the mental culpability required for the commission thereof" (Penal Law, § 20.00). Nor does the provision in the Penal Law defining the crime of criminal facilitation in the second degree (§ 115.00) serve to sustain the manslaughter and criminally negligent homicide counts, since it defines such a crime as involving or engaging in conduct which provides a person who intends to commit a crime with means or opportunity for the commission of such crime and the aid must in fact assist such person to commit a felony. Here the aid given was not to enable the recipient to commit manslaughter or criminally negligent homicide, both felonies, but to commit misdemeanors, violations of the narcotics or loitering laws.

It is clear therefore that under the laws of this State there is no basis for holding the defendant as an accessory or as an aider or abettor of the killing of the decedent. The latter's death of narcotic poisoning resulting from his voluntary self-injection of heroin was not a crime involving killing, since he did not intend to kill himself or anyone else and it is apparent that he was not aware that he would die as a result of his act

of taking the narcotic. If the defendant played any role involving criminal culpability in the death of the decedent, it would have been as a principal.

The only possible applicable provisions of the crime of manslaughter as defined in section 125.15 of the Penal. Law are (1) recklessly causing the death of another person and (2) intentionally causing or aiding another person to commit suicide. The second definition clearly has no application to this case because there is no evidence or claim that the decedent took the heroin with the intent of killing himself or was even aware that the outcome of his taking the narcotic would be his death. The first definition requires " recklessly " causing the death of the decedent. " Recklessly " is defined (in Penal Law, § 15.05, subd. 3) as an awareness and conscious disregard of a substantial and unjustifiable risk that the result in question will occur. The definition also requires that the risk must be of such nature and degree that disregard of it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. In defining criminal negligence, a term used to define criminally negligent homicide in section 125.10 of the Penal Law, subdivision 4 of section 15.05 states that a person acts with criminal negligence with respect to a result described in the statute defining the offense " when he fails to perceive a substantial and unjustifiable risk that such result will occur " and declares, further, that " the risk must be of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation." These parallel definitions make it manifest that for conduct to qualify as reckless it must be " a gross deviation from the standard of conduct that a reasonable person would observe in the situation " (Penal Law, § 15.05, subd. 3) ; and to qualify as criminally negligent the conduct must be " a gross deviation from the standard of care that a reasonable person would observe in the situation " (Penal Law, § 15.05, subd. 4).

It has been held that the proof required for a criminal conviction under these sections of the new Penal Law is that the actor have knowledge of the highly dangerous nature of his actions or knowledge of such facts as under the circumstances would disclose to a reasonable man the danger of his action and that despite his knowledge he so acts (*People* v. *Taylor,* 31 A D 2d 852; *People* v. *Haney,* 59 Misc 2d 162).

While there has recently been a substantial increase in deaths from narcotics, the proportion of such deaths to the number of times narcotics are currently being used by addicts and for

legal medical treatment is not nearly great enough to justify an assumption by a person facilitating the injection of a narcotic drug by a user that the latter is thereby running a substantial and unjustifiable risk that death will result from that injection. It is hardly analogous to the sale of wood alcohol, a deadly poison (*People* v. *Licenziata,* 199 App. Div. 106), or to the illegal use of drugs or implements to induce an abortion (*People* v. *McGonegal,* 136 N. Y. 62) or to building a structure so poorly that it collapses (*People* v. *Orzel,* 263 N. Y. 200).

Similarly, the word " gross " in the term " gross deviation " in the definitions of " recklessly " and " criminal negligence " in section 15.05 of the Penal Law means " glaring or flagrant " or " entire, or total " rather than " disgusting ", all definitions of the adjective appearing in the New Century Dictionary (vol. 1, p. 688). Here, the prosecution seeks to implement the public disgust and repulsion toward the peddler of narcotic drugs by invoking the punishment for manslaughter or criminally negligent homicide against the peddler, as a defendant, because his sale and assistance to a customer in injecting the drug sold was followed by the death of the purchaser from narcotic poisoning, but in doing so the prosecution is improperly interpreting the adjective " gross " as though it means " disgusting " instead of " flagrant " or " entire ".

It is my view that the court below was completely correct when it found that the Legislature's language in defining the crimes of manslaughter and criminally negligent homicide and dangerous drug offenses in no way reflects an intent to extend the coverage of the first two of these to persons selling narcotic drugs to others who die when using them. Like the court below, I decry the base evil done by peddlers of narcotic drugs, but this does not permit the court to stretch the statutory sanctions applicable to criminally negligent homicide to make them applicable to one who sells narcotics to a person who, on using the drug, dies of narcotic poisoning. If that ought to be done, it is for the Legislature to make that determination.

MARTUSCELLO, Acting P. J., CHRIST and BRENNAN, JJ., concur with BENJAMIN, J.; SHAPIRO, J., concurs in the opinion by BENJAMIN, J., with a separate opinion, in which MARTUSCELLO, Acting P. J., concurs.

Order affirmed insofar as appealed from.