Commonwealth, Appellant, *v.* Bowden.

Argued April 23, 1973. Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Edward Rendell,* Assistant District Attorney, with him *Maxine J. Stotland, Albert L. Becker,* and *Arthur R. Makadon,* Assistant District Attorneys, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen*

*Specter,* District Attorney, for Commonwealth, appellant.

*David H. Kubert,* for appellee.

OPINION BY MR. JUSTICE EAGEN, October 3, 1973:

This is an appeal by the Commonwealth[1] from the granting of a motion in arrest of judgment by the Court of Common Pleas of Philadelphia. The salient facts are as follows:

The appellee, Halford Bowden, was indicted for murder in connection with the death of Alphonso Saunders. The evidence established Saunders invited Bowden to share a bag of heroin with him, and provided the funds for the purchase of the narcotic. Bowden purchased the heroin and injected himself. Saunders was unable to properly inject himself, and requested Bowden to make the injection and Bowden complied. Saunders died from an adverse reaction to the dosage of heroin.

Appellee was tried before Judge Robert W. WILLIAMS, JR. sitting without a jury and was found guilty of murder in the second degree. Motions for new trial and in arrest of judgment were denied on April 21, 1972, but sentence was deferred. On September 20, 1972, the court reconsidered the disposition of the post-trial motions and after argument granted the motion in arrest of judgment on the ground the trial evidence was insufficient as a matter of law to establish malice, a necessary ingredient of the crime of murder in the second degree.

The Commonwealth initially contends the trial judge lacked the power to vacate his order of April 21, 1972, denying the post-trial motions. The foundation of the

---

[1] Since the order appealed from was based on a pure question of law, the Commonwealth may appeal. *Commonwealth v. Melton,* 402 Pa. 628, 168 A. 2d 328 (1961).

Commonwealth's argument is the Act of June 1, 1959, P. L. 342, §1, 12 P.S. 1032,[2] which states a court may alter an order, decree, judgment or sentence only within the term of court, or for a period of thirty days from the date of entry of the original order where the term of court terminates prior to a thirty-day period. The Commonwealth asserts since the judge changed his order in the instant case beyond the statutory period, his order granting the motion in arrest of judgment was void.

The flaw in the Commonwealth's argument is it overlooks the fact the statute does not apply to interlocutory orders. The statute is a mere codification of the common law with a thirty-day modification, and the common law rule was stated in *Markofski v. Yanks,* 297 Pa. 74, 146 A. 569 (1929) as follows: "We find no error in the order appealed from. The common law rule that a court cannot change its judgment after the term at which it was entered applies only to a final judgment and is inapplicable to interlocutory orders

---

[2] The statute reads:

*"Alteration, suspension, reinstatement, termination, amendment or rescission of order, decree, judgment or sentence.*

"In any civil, criminal or equitable proceeding in which the court has heretofore been vested with the power, jurisdiction and authority to alter, modify, suspend, reinstate, terminate, amend or rescind, any order, decree, judgment or sentence only during the term of court in which the order, decree, judgment or sentence, was entered of record, the court, in addition to such power, jurisdiction and authority, shall hereafter have the same power, jurisdiction and authority to alter, modify, suspend, reinstate, terminate, amend or rescind, the order, decree, judgment or sentence for a period of thirty days subsequent to the date of entering of record the order, decree, judgment or sentence, in any instance where the term of court shall terminate prior to such thirty day period: Provided, That all parties in interest, including the district attorney in criminal cases, are notified in advance of such proposed alteration, modification, suspension, reinstatement, termination, amendment or rescission."

such as here in question. 'The rule against amending or vacating a judgment after expiration of the term at which it was rendered has no application to interlocutory judgments, and such judgments may be opened, amended, or vacated at any time while the proceedings remain in fieri, and before the final judgment': 34 C. J. 216, citing numerous authorities, including McCoy v. Porter, 17 S. & R. 59. The same is stated in 15 R.C.L. page 692, section 144, as follows: 'The general rule . . . denying to a court the power to control its judgments after the term applies only to final judgments, and where an order or judgment is interlocutory only, it may be set aside at a term of court subsequent to that at which it was entered.' " Id. at 77-78, 146 A. at 570. The order denying motions for new trial and in arrest of judgment are non-final, interlocutory orders; thus, not within the ambit of the statute,[3] and the judge had the power to alter his order.

The issue on the merits can be concisely stated as follows: does the injection of another person with the drug heroin, with death resulting, constitute the crime of murder in the second degree. All cases must be decided on their particular facts, hence a detailed factual background is in order. Saunders, the deceased, inquired of Bowden if he wished to share a bag of heroin with him; Saunders furnished the money for the purchase and Bowden made the buy. Bowden prepared the drug and used half of the quantity himself, leaving the other half for Saunders. Saunders was unable to properly administer the heroin to himself and asked Bow-

---

[3] It must be remembered judgment of sentence had not been passed in the instant case, thus, the purpose of the statute, finality, *Commonwealth v. Mackley*, 380 Pa. 70, 110 A. 2d 172 (1955), and barring parties from extending the appeal period, *Philadelphia Suburban Transportation Co. v. DiFrancesco*, 362 Pa. 326, 66 A. 2d 254 (1949), are not affected by allowing a change of an interlocutory order.

den to inject him, which Bowden did, and Saunders subsequently died. The record established both Bowden and Saunders were heroin addicts and had used the drug together during the years 1969-1970, and during this period Bowden had injected Saunders with the drug with no adverse reaction.

The Commonwealth produced the medical examiner for the City of Philadelphia who stated that after performing a postmortem examination on Saunders, he found morphine and quinine in the blood stream and determined death was caused by an adverse reaction to an injection of the drug, heroin. The doctor stated the test showed the amount of narcotic taken by the deceased was consistent with that taken by an addict, and death would be unexpected or unforeseeable from such a dose in an addict.

Murder is defined as an unlawful killing of another with malice aforethought, express or implied. Cf. *Commonwealth v. Tyrrell,* 405 Pa. 210, 174 A. 2d 852 (1961) ; *Commonwealth v. Dorazio,* 365 Pa. 291, 74 A. 2d 125 (1950). The legislature has divided murder into two classifications, murder in the first degree and murder in the second degree. All murder perpetrated by poison or lying in wait, or any wilful, deliberate or premeditated murder or murder which is committed in the perpetration of certain felonies is murder in the first degree. Every other kind of murder is murder in the second degree. The distinguishing factor between murder in the first degree and murder in the second degree is the former requires specific intent to take a life, whereas the necessary element for murder in the second degree is malice. Cf. *Commonwealth v. Burton,* 450 Pa. 532, 301 A. 2d 599 (1973). It is well established malice may be found from the attending circumstances of the act resulting in the death. Cf. *Commonwealth v. Buzard,* 365 Pa. 511, 76 A. 2d 394 (1950).

In *Commonwealth v. Malone,* 354 Pa. 180, 47 A. 2d 445 (1946), this Court set out a standard for determining when malice may be found from the attending circumstances of the act: "In Pennsylvania, the common law crime of murder is divided into two degrees, and murder of the *second* degree includes every element which enters into first degree murder except the intention to kill: Commonwealth v. Divomte, 262 Pa. 504, 507, 105 A. 821. When an individual commits an act of gross recklessness for which he must reasonably anticipate that death to another is likely to result, he exhibits that 'wickedness of disposition; hardness of heart; cruelty; recklessness of consequences and a mind regardless of social duty' which proved that there was at that time in him 'that state or frame of mind termed malice.'" Id. at 183, 47 A. 2d at 447.

Under the facts of the instant case, we do not believe the necessary element of malice can be implied from Bowden's act of injecting Saunders with the drug, heroin. Initially, although we recognize heroin is truly a dangerous drug, we also recognize that the injection of heroin into the body does not generally cause death. Unfortunately, there are thousands of individuals who use or abuse heroin daily. As Mr. Justice SHAPIRO stated in a concurring opinion in *People v. Pinckney,* 328 N.Y.S. 2d 550 (App. Div. 1972): "While there has recently been a substantial increase in deaths from narcotics, the proportion of such deaths to the number of times narcotics are currently being used by addicts and for legal medical treatment is not nearly great enough to justify an assumption by a person facilitating the injection of a narcotic drug by a user that the latter is thereby running a substantial and unjustified risk that death will result from that injection." Id. at 556-57.

Moreover, and more importantly, under the facts of the instant case, Bowden knew Saunders was an addict and had used heroin with him for a period of time, he

knew the deceased's tolerance to heroin and knew the quantity of heroin he injected into Saunders was his normal dosage, and he knew this dosage had never adversely affected Saunders before in the times he had used the drug. Moreover, the medical testimony established that the amount of heroin taken by Saunders would not normally cause death in an addict. Hence, under the facts of the instant case, Bowden could not "reasonably anticipate that death to [Saunders was] likely to result."

Order affirmed.

Mr. Chief Justice Jones took no part in the consideration or decision of this case.

————

Concurring Opinion by Mr. Justice Nix:

The majority opinion ignores the fact that there are two theories under the facts of this case which could be offered to support a verdict of second degree murder. To support the trial court's granting of the motion in arrest of judgment there must be a finding that the evidence presented was insufficient under either theory. I fully concur with the Court's conclusion that the evidence did not establish malice for traditional common-law murder. I write this concurring opinion because I believe the Court failed to dispose of the second possible theory, to wit, common-law felony murder.

Originally, the English common-law felony murder rule provided that one who, in the commission or attempted commission of a felony, caused another's death, was guilty of murder, without regard to the dangerous nature of the felony involved.[1] As the number of felonies multiplied so as to include a great number of relatively minor statutory offenses, many of which involved

————

[1] Perhaps the most common citation is dictum in *Rex v. Plummer*, Kil. 109, 117 (1701): "So if two men have a design to steal a hen, and one shoots at the hen for that purpose, and a man be killed, it is murder in both, because the design was felonious."

no great danger to life or limb, it became necessary, in order to alleviate the harshness of the rule, to limit it in some fashion.[2]

Many American authorities have also concluded that this theory should be limited to those instances where the felony is inherently dangerous to human life.[3] Under this view the Commonwealth's burden encompasses more than merely showing that death resulted during the commission of a felony, it must, in addition, demonstrate that the felonious conduct posed an unreasonable threat to life or serious bodily harm.[4]

The basic theory underlying the felony murder rule is that the intent to commit the felony is equivalent to the legal malice required for common-law murder. See

---

[2] At the time the felony murder doctrine developed all felonies were punishable by death, so it made little difference whether the felon was hanged for the felony or for murder. Today most felonies are punishable by penalties much less severe than those imposed for murder, so the situation is different from what it was at common law. See Perkins, "A Re-examination of Malice Aforethought," 43 Yale L.J. 537, 557-563 (1934).

[3] Many writers have suggested limits on the broad language which the early cases employed in convictions based on the second degree felony murder rule. Moreland, The Law of Homicide 222 (1952). Moreland assumes the felony murder rule will be used only in prosecutions for deaths resulting from felonies dangerous to human life. Under his analysis "the lawfulness or unlawfulness of the act in the course of which the homicide occurred is not the deciding factor; the test of liability is whether it was of such a nature as to be wantonly disregardful of the lives and safety of others. This will depend upon *the amount of danger involved in the act itself*." (Emphasis added). *Accord*, Holmes, The Common Law 58 (1881); Perkins, "A Re-examination of Malice Aforethought," 43 Yale, L.J. 537, 560 (1934); Wechsler and Michael, "A Rationale of the Law of Homicide," 37 Colum. L. Rev. 701, 1261 (1937).

[4] Under the facts of the case at bar, death occurred as a result of the appellee's violation of The Drug, Device, and Cosmetic Act, Act of September 26, 1961, P. L. 1664, §20, 35 P.S. §780-20(c) and (d). This section makes it a felony for any person to possess, sell, dispense or give away heroin.

*Commonwealth v. Malone,* 354 Pa. 180, 47 A. 2d 445 (1946). For this theory to be tenable the nature of the felony must be such that an intent to commit that crime exhibits a conscious disregard for human life, hardness of heart, cruelty, recklessness of consequences and a mind regardless of social duty. Where, however, the acts which constitute felonious conduct do not possess a sufficient danger to human life to justify the application of the doctrine of common-law felony murder, the doctrine is inapplicable because there is a failure to establish the requisite state of mind from the forming of the intention to commit the felony.

The case at bar is one involving a statutory offense with no common-law background. Narcotics and their use are a modern day problem, and the laws which control this problem were unknown at common law. As discussed in the majority opinion, the acts attributed to the appellee were not the type of conduct which would justify a finding of the requisite state of mind. An injection of heroin into the body of a user of narcotics in a dosage consistent with his prior habit does not represent the serious threat of death or grave bodily harm that would allow a court to conclude that the framing of an intention to perform these acts exhibited the characteristics which would be comparable to the legal malice required for murder.

In an analogous situation, the Supreme Court of Michigan in the case of *People v. Pavlic,* 227 Mich. 562, 199 N.W. 373 (1924), rejected the applicability of the felony murder rule on the ground that, although the crime was a felony, it was not directly and naturally dangerous to human life, where defendant sold illegally manufactured liquor to the deceased in violation of a law making the sale of intoxicants a felony and death resulted from acute alcoholism and exposure.

"It is not a common-law felony. It is not inherently criminal. Notwithstanding the fact that the statute has

declared it to be a felony, it is an act not in itself directly and naturally dangerous to life. So if one in the commission of such an act unintentionally causes the death of another, he is not guilty of murder. . . ." Id. at 565, 199 N.W. at 374.

The Supreme Court of California has also reached the same conclusion in *People v. Satchell,* 6 Cal. 3d 28, 489 P. 2d 1361, 98 Cal. Rptr. 33 (1971) (violation of statute prohibiting the possession of a concealable weapon by one previously convicted of a felony); *People v. Phillips,* 64 Cal. 2d 574, 414 P. 2d 353, 51 Cal. Rptr. 225 (1966) (grand theft by false pretenses); *People v. Williams,* 63 Cal. 2d 452, 406 P. 2d 647, 47 Cal. Rptr. 7 (1965) (conspiracy to obtain methedrine, a narcotic). In reaching these results the California Court recognized that to extend the felony murder doctrine to include felonies not inherently dangerous to human life would not serve the ends of punishment.[5]

Thus, I conclude the lower court was correct in granting the motion in arrest of judgment.

Mr. Justice ROBERTS and Mr. Justice MANDERINO join in this concurring opinion.

---

[5] In *Williams* the California Court stated that the purpose of the felony murder rule "may be well served with respect to felonies such as robberies or burglary, but it has little relevance to a felony which is not inherently dangerous. If the felony is not inherently dangerous it is highly improbable that the potential felon will be deterred; he will not anticipate that any injury or death might arise solely from the fact that he will commit the felony." 63 Cal. 2d at 457-458 n.4, 406 P. 2d at 650, 47 Cal. Rptr. at 10.