UNITED STATES, Appellee,

v.

Specialist Four Joseph S. MAZUR, SSN 059–50–5306, United States Army, Appellant.

CM 437687.

U. S. Army Court of Military Review.

22 Aug. 1979.

---

Captain Robert L. Gallaway, JAGC, argued the cause for the appellant. With him on the brief were Major Benjamin A. Sims, JAGC, and Captain Maurice D. Healy, JAGC.

Captain Charles A. Cosgrove, JAGC, argued the cause for the appellee. With him on the brief were Colonel Thomas H. Davis, JAGC, Lieutenant Colonel R. R. Boller, JAGC, and Major Michael B. Kennett, JAGC.

Before MITCHELL, DRIBBEN and GARN, Appellate Military Judges.

## OPINION OF THE COURT

GARN, Judge:

Specialist Mazur, in accordance with his pleas, was found guilty of wrongful possession and use of heroin, and involuntary manslaughter by culpable negligence. He was sentenced by the military judge to a bad-conduct discharge, confinement at hard labor for two years, forfeiture of all pay and allowances, and reduction to the lowest enlisted grade. The convening authority reduced the period of confinement to ten

months, in accordance with a pretrial agreement, and approved the remainder of the adjudged sentence.

During the providence inquiry, the accused stated that he had raised the alleged manslaughter victim's arm "to get a vein up" and steadied the needle while the victim injected heroin into his vein. After the military judge explained the meaning of culpable negligence and proximate cause, the accused stated that his actions were culpably negligent and proximately caused the death of the alleged victim. The accused also entered into a stipulation of fact to the same effect. Nevertheless, the accused's appellate defense counsel have assigned the following error:

THE APPELLANT'S PLEA OF GUILTY TO INVOLUNTARY MANSLAUGHTER WAS IMPROVIDENT AS IT WAS NOT BASED UPON THE FACT OF CULPABLE NEGLIGENCE.

The accused related other facts and beliefs during the providence inquiry which his appellate counsel argue are inconsistent with the foreseeability of harm necessary for finding culpable negligence. The accused stated he had extensive experience with heroin, having previously used that drug for periods of time totaling about thirteen months. He knew the decedent had also used heroin previously. Conceding he knew the decedent had used heroin about three hours before the fatal injection, the accused stated he too had injected heroin at that time as well as again just prior to the decedent's final, fatal use of heroin. On each occasion the heroin they used came from a common source and, based on the accused's experience, appeared to him to be an "average" dose. Furthermore, the accused previously had observed the decedent use twice that amount in one injection of heroin, obviously without fatal results. The accused stated he had not believed there was any danger because he "did it too" and had "seen him do more than that."

The accused's appellate counsel correctly conceded, during oral argument, that the standard for measuring foreseeability

of harm is objective (the "reasonable man") rather than subjective. Counsel argue, however, that, because of the surrounding circumstances in this case, the probability of death was so remote that death was not reasonably foreseeable and, consequently, the accused's conduct was not culpably negligent.

In support of their position counsel have called our attention to the cases of *Commonwealth v. Bowden*, 456 Pa. 278, 309 A.2d 714 (1973) and *People v. Pinckney*, 38 A.D.2d 217, 328 N.Y.S.2d 550 (1972). The holdings, in favor of the accused, in those cases were premised, in part at least, on the relative improbability of death resulting from heroin use; in *Bowden* death was less foreseeable also because, *inter alia*, the accused knew the victim's tolerance and the amount used was the victim's normal dosage. *Bowden* involved construing the meaning of malice in a murder prosecution under Pennsylvania law; *Pinckney* involved construing and evaluating New York statutes and the New York statutory scheme relating to homicide. In addition to neither binding or persuading this Court, those cases can be distinguished.

■ Turning to the military cases involving manslaughter by culpable negligence when death resulted from a drug overdose, appellate defense counsel point out that the courts have either included in their opinions and implicit rationale the fact that the accused knew that the dosage was excessive or, at least, did not include any indication that the accused had any prior experience with drugs and knowledge about the victim's tolerance of the amount used. *United States v. Thibeault*, 43 C.M.R. 704 (A.C.M.R. 1971); *United States v. Uno*, 47 C.M.R. 683 (A.C.M.R.1973); *United States v. Monroe*, 50 C.M.R. 423 (N.C.M.R.1975).* However, in those cases the courts made it clear that, whether viewed as inherently dangerous to human life or *malum in se*, aiding another's use of a dangerous drug is culpably negligent conduct which, when death results, amply supports a manslaughter conviction.

* *See also United States v. Romero*, 1 M.J. 227 (C.M.A.1975), a negligent homicide case in which the Court of Military Appeals pointed

■ Logically, the relative probability of death does relate to the foreseeability of death. The fact that survival is more likely than death is not determinative of the question, however. In paragraph 198b of the Manual for Courts-Martial, United States, 1969 (Revised edition) the following guidance is provided:

> . . . the basis of a charge of involuntary manslaughter may be a negligent act or omission which, when viewed in the light of human experience, *might* foreseeably result in the death of another, even though death would not, necessarily, be a natural and probable consequence of the act or omission. (Emphasis added.)

In the case of *United States v. Day*, 23 C.M.R. 651 at p. 656 (N.B.R.1957), a Navy Board of Review characterized as "an excellent delineation of the question" of the relationship between probability and negligence the following observations made in *Tullgren v. Amoskeag Manufacturing Co.*, 82 N.H. 268, 133 A. 4, 8 (1926):

> If there is some probability of harm sufficiently serious that ordinary men would take precautions to avoid it, then failure so to do is negligence. That the danger will more probably than otherwise not be encountered on a particular occasion does not dispense with the exercise of care. . . . The test is not of the balance of probabilities, but of the existence of some probability of sufficient moment to induce action to avoid it on the part of reasonable mind.

■ The danger of injecting heroin into the vein of a human being does not require lengthy exposition. Concededly, in the circumstances of this case death was less foreseeable than it would be in some other heroin use cases. The diminution of probability, however, does not obviate nor, in this case does it sufficiently reduce, the foreseeability of death.

While we do not believe additional circumstances indicative of a gross, reckless,

out the accused had been warned that the dosage was dangerously excessive before he assisted the victim in injecting the lethal drug.

deliberate, or wanton disregard for the foreseeable consequences are necessary to our decision, we note it does not appear that Specialist Mazur had any knowledge or training in the fields of chemistry or medicine. There was no apparent basis, other than his own reaction, for his gauging the purity and potency of the substance. Nor does it appear the accused made any effort to ascertain whether the decedent had ingested other drugs prior to his use of heroin. Ironically, during the providence inquiry, the accused related that he had, subsequent to his friend's death, heard that the decedent had ingested substantial quantities of alcohol and a drug known as Mandrax during the day preceding his death. Whether true or not, that possibility is illustrative of one of the many dangerous aspects of heroin use that he neglected to consider.

The accused's belief, and the reasons for his belief, that the heroin posed no danger are matters to be considered in extenuation of the offense. In view of the approved sentence, particularly the confinement portion, it is apparent that those factors were adequately weighed.

The findings of guilty and the sentence are affirmed.

Senior Judge MITCHELL and Judge DRIBBEN concur.