CRAWFORD, Chief Judge
(dissenting):
There are two very basic reasons to affirm in this case. First, there was substantial independent evidence to establish probable cause for the preferral of charges against Appellant before immunity was ever granted. Second, Private (PVT) Smoyer’s decision to testify was made of his own free will, thus attenuating any connection with Appellant’s immunized statement. In essence, the majority overlooks the independent evidence establishing probable cause to apprehend both PVT Smoyer and Appellant, and holds that false statements made pursuant to a grant of immunity taint truthful, voluntary testimony.
FACTS
Appellant entered a conditional plea of guilty to involuntary manslaughter involving the heroin overdose of a fellow soldier, Specialist (SPC) Coffin. Prior to his pleas, Appellant moved to dismiss the charges on the grounds that the Government violated his Fifth Amendment right against self-incrimination by using his pretrial immunized statement, implicating himself and PVT Smoyer to induce PVT Smoyer to provide immunized testimony implicating Appellant.
On the morning of April 5, 1998, SPC Coffin was pronounced dead from a massive overdose of heroin. Immediately after his death, the Criminal Investigation Command (CID) began investigating the cause of death. CID special agents conducted canvas interviews of the soldiers in the barracks, and uncovered circumstantial evidence pointing to the involvement of Appellant and PVT Smoyer. However, Appellant and PVT Smoyer agreed not to reveal any relevant facts to investigators in hopes of avoiding prosecution. Both Appellant and PVT Smoyer denied any involvement or knowledge of SPC Coffin’s death.
The special agents learned from PVT Wilson on April 8 that Appellant was returning home from leave in New York City and had planned to bring drugs back with him. PVT Wilson admitted that he had previously used heroin with Appellant and PVT Smoyer in November 1997. On that occasion, Appellant provided the heroin and PVT Smoyer injected PVT Wilson. PVT Wilson told CID that he suspected that SPC Coffin had been killed by overdosing on heroin supplied by Appellant and injected by PVT Smoyer. Later, a physical examination of Appellant revealed he had several puncture wounds in both arms consistent with hypodermic needle marks.
PVT Wilson also told the investigators that Appellant used heroin regularly, and that SPC Coffin picked up Appellant at the airport on the day of his death. PVT Wilson stated that he had seen SPC Coffin in Appellant’s room appearing high. Moreover, on the same date, CID interviewed PVT Smoyer, and he admitted using heroin with Appellant and PVT Wilson on several occasions.
PVT Wilson’s information was corroborated on April 9 by PVT Aaron Carter, who told investigators that he saw SPC Coffin, Appellant, and PVT Smoyer in Appellant’s room on April 5, and that he believed Appellant supplied SPC Coffin with heroin. PVT Carter also admitted that he knew PVT Smoyer had purchased hypodermic needles on the eve *77 ning of April 4. After SPC Coffin’s death, PVT Carter asked Appellant if SPC Coffin used heroin, and Appellant answered that he did not know, but that if he did use heroin, “it was only a little bit.” Based on this information, the Government decided to pursue charges against both Appellant and PVT Smoyer.

Discussion

The Supreme Court first applied the exclusionary rule to derivative evidence in Silverthome Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920). In extending the exclusionary rule to derivative evidence, the Court stated that if knowledge of facts or evidence is “gained from an independent source they may be proved like any others.” Id. at 392, 40 S.Ct. 182. Nevertheless, it is not enough to show a causal connection between the original evidence and the derivative evidence, because as “a matter of good sense ... such connection may have become so attenuated as to dissipate the taint.” Nardone v. United States, 308 U.S. 338, 341, 60 S.Ct. 266, 84 L.Ed. 307 (1939).
Both the independent source and attenuation doctrines apply to this case. There was independent evidence yielding probable cause for the preferral of Appellant’s charges. Moreover, PVT Smoyer’s testimony was sufficiently attenuated to permit its use against Appellant.
A. Independent Source of Probable Cause for Preferral.
Preferral of charges occurs when a commander swears that he either investigated or has personal knowledge of the facts set forth in the charges, “and that they are true in fact to the best of that person’s knowledge and belief.” Rule for Courts-Martial 307(b)(2). Although neither the Manual for Courts-Martial, United States (2002 ed.) nor Article 30, Uniform Code of Military Justice, 10 U.S.C. § 830 (2000), specifically provides that the standard for preferral is probable cause, this Court has held that probable cause is required when an individual swears the charges are true to the best of his knowledge and belief. See, e.g., United States v. Miller, 33 M.J. 235, 237 (C.M.A.1991).
An application of hornbook law establishes that there was probable cause to prefer charges against Appellant. The facts here are similar to the following factual scenario in the Restatement of Torts, 2d section 119, illustration 2 (1965): Officer A sees B and C bending over a dead man, D; B and C each accuses the other of murdering D. Although A is not sure that either B or C killed D, he has reasonable grounds to believe that one of them is the killer. Thus, Officer A is permitted to arrest either. In this vein, this Court has held that the furnishing of a drug which causes an overdose places the responsibility on the supplier — in this case, Appellant. United States v. Henderson, 23 M.J. 77 (C.M.A.1986); United States v. Mazur, 8 M.J. 513 (A.C.M.R.1979), aff'd 13 M.J. 143 (C.M.A.1982).
Applying this law to the ease at hand, there is probable cause to believe that the heroin supplier — Appellant — was responsible for the death. Thus, setting aside the voluntary decision of PVT Smoyer to testify pursuant to a grant of immunity — a decision made long after Appellant’s false statement — the evidence known at the time of preferral furnished an independent basis for the charges in this case. Officers were permitted to arrest either Appellant or PVT Smoyer, both of whom were in the room at the time of SPC Coffin’s death.
Moreover, independent evidence was obtained as a result of a police investigation. A witness was not discovered after Appellant’s immunized statement, like in United States v. Ceccolini 435 U.S. 268, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978). To the contrary, PVT Smoyer’s identity, his role, and Appellant’s role were known well before PVT Smoyer’s immunized testimony. When such identity is known, a court should be reluctant to hold the witness’s testimony tainted by the accused’s prior immunized statement, given the fact that witnesses, unlike tangible evidence, can make themselves known to the police. PVT Smoyer made a voluntary decision to testify based on what he knew were the facts, his interaction with his father, and personal reflection. There was no exploitation of an illegality. His voluntary plea, pursuant to a *78 pretrial agreement, was enough to sever any taint from Appellant’s immunized statement.
B. Sufficiently Attenuated Testimony.
In addition to the independent evidence available to establish probable cause to prefer the charges, PVT Smoyer’s testimony was “sufficiently attenuated” to permit its use against Appellant. United States v. Leon, 468 U.S. 897, 911, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). As to the attenuation rules, we should examine Supreme Court practice, which is reflected in Military Rule of Evidence 301(b)(1) and 304(e)(3). Applying the Court’s mandate in Nardone, 308 U.S. at 341, 60 S.Ct. 266, PVT Smoyer’s testimony was admissible if it had “become so attenuated as to dissipate the taint” from Appellant’s immunized statement.
The correct test is “whether, granting establishment of the [immunized statement], the evidence to which [the] instant objection is made has been come at by exploitation of that [immunized statement] or instead by means sufficiently distinguishable to be purged of the [immunized statement].” Wong Sun v. United States, 371 U.S. 471, 488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) (citation omitted). See also New York v. Harris, 495 U.S. 14, 17, 110 S.Ct. 1640, 109 L.Ed.2d 13 (1990)(“‘[W]e have declined to adopt a “per se or ‘but for’ rule” that would make inadmissible any evidence, whether tangible or live-witness testimony, which somehow came to light through a chain of causation that began with [the granting of immunity].’ ’’(quoting Ceccolini, 435 U.S. at 276, 98 S.Ct. 1054). In Leon, 468 U.S. at 911, 104 S.Ct. 3405, the Court stated: “We also have held that a witness’ testimony may be admitted even when his identity was discovered in an unconstitutional search.” The Court recognized that the evidence may be “sufficiently attenuated to permit the use of that evidence at trial____” Id.
Moreover, there is no bright line rule to determine if evidence is sufficiently attenuated to be admissible. The Court examines several factors that either support or negate attenuation: temporal proximity, length of the causal chain, acts of free will, flagrancy of a violation, and the nature of the derivative evidence. Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).
In Appellant’s case, there are key dates and facts which, taken together, show PVT Smoyer’s plea was not the result of Appellant’s immunized statement. PVT Smoyer’s decision to testify was not made immediately after Appellant’s immunized statement, and the judge found that there was a break between the immunized statement and his decision, which was an act of free will. Furthermore, there is no argument as to intentional or reckless misconduct by- governmental officers in obtaining the immunized testimony.
As of April 9, the Government had enough information to convict both PVT Smoyer and Appellant. If one looks at the guilty plea and the stipulation in this case, both signed prior to the motion to dismiss, all the evidence obtained as part of the guilty plea and the providence inquiry was known by the police by April 9, and the preferral of charges against PVT Smoyer and his decision to testify against Appellant were not related to Appellant’s immunized statement. When all the factors in Brown are considered, this Court should find that there was sufficient attenuation in this case to allow Appellant’s plea to stand.
Lastly, and most importantly, the nature of the derivative evidence — testimony by a willing witness — severs any connection with Appellant’s immunized statement.
For all of these reasons, I respectfully dissent.