**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Shahram NAHAVANDIAN, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 14, 2004.

Filed April 23, 2004.

Reargument Denied June 21, 2004.

Richard R. Feudale, Mt. Carmel, for appellant.

Anthony J. Rosini, Asst. Dist. Atty., Sunbury, for Com., appellee.

Before: STEVENS, PANELLA, and OLSZEWSKI, JJ.

OLSZEWSKI, J.

¶ 1 Shahram Nahavandian (appellant/defendant) appeals from his sentence imposed by the Court of Common Pleas of Northumberland County (Sacavage, P.J.). A jury convicted appellant of delivery of a controlled substance (three counts), possession with intent to deliver a controlled substance (three counts), possession of a controlled substance (two counts), conspiracy, and drug delivery resulting in death.

¶ 2 The basic facts of this case are simple. On November 24, 1999, Sherry Dunkleberger, Michael Moyer, and Misty Derk were partying. They wanted to purchase some heroin for personal use, so they drove to Shamokin where Sherry purchased heroin from appellant. When they returned home, Moyer, Derk, Daniel Merrill, and Charlie Coxe began to get high.

Merrill admitted to injecting Moyer with the heroin purchased by Dunkleberger from appellant. The next day, Michael Moyer was found dead from an apparent drug overdose.

¶ 3 The police, while investigating Moyer's death, quickly learned that appellant was Dunkleberger's supplier. They then sought the assistance of Kelly Hepner and Robert Shurock, both police informants, to make a "controlled buy" with appellant. On December 1, Hepner and Shurock contacted appellant and Kathy Hynes (appellant's co-conspirator). Appellant and Hynes drove to the home of Hepner and Shurock. Hepner and Shurock then gave money to appellant and Hynes. Appellant and Hynes were then supposed to drive to Reading to purchase the drugs.

¶ 4 On December 2, appellant and Hynes, along with Thomas Kirchoff, traveled to Reading. They were under surveillance during the entirety of their trip. Once in Reading, they purchased the drugs. On the return trip, they decided to take a detour through Elysburg. At this point the police stopped the car and arrested appellant, Hynes, and Kirchoff.

¶ 5 Police first charged appellant with offenses arising out of the Hepner/Shurock controlled buy in a criminal complaint numbered 463. A conspiracy charge was later included in this complaint by means of joinder.[1] The police then charged appellant with a second set of crimes arising from the death of Michael Moyer. These charges were filed in criminal complaint number 214.

¶ 6 Appellant makes ten arguments on appeal: (1) that the lower court incorrectly joined the various informations for one trial; (2) that the death by drug delivery statute is unconstitutional;[2] (3) that the Commonwealth unfairly surprised appellant when it presented evidence of the conspiracy and the possession with intent to deliver charges in regards to Thomas Kirchoff; (4) that lower court improperly denied appellant's motion to change venue; (5), (6), and (7) that the verdicts were against the weight and sufficiency of the evidence; (8) that the court failed to grant a mistrial after a pre-trial transcript ended up in jury room during deliberations; (9) that the Commonwealth's closing statement was inflammatory and prejudicial; and (10) that the trial court failed to suppress evidence obtained during the warrantless stop and arrest of appellant. We will address each issue *seriatim.*

## WERE THE COMPLAINTS PROPERLY JOINED?

 ¶ 7 Appellant argues that the lower court incorrectly joined the crimes arising from the Moyer death and the Hepner/Shurock controlled buy. To support his argument, he cites to 18 Pa.C.S.A. § 110. Appellant's reliance on this section is misplaced. Section 110 is a compulsory joinder rule that requires the Commonwealth to join certain offenses arising from the same conduct or same criminal episode. The Commonwealth's failure to do so will result in the prohibition of any subsequent prosecution for these offenses. This section is a statutory companion to the constitutional double jeopardy claim. Appellant is not arguing double jeopardy. He complains that the joinder of the com-

---

1. Appellant challenges, in point I of his brief, the joinder of the conspiracy charge (in complaint number 791) with the charges arising from the Hepner/Shurock controlled buy (in complaint number 463). Appellant, however, agreed to the joinder of these two complaints during pre-trial proceedings. Therefore, appellant waived any challenge to the joinder of these two complaints.

2. This issue is currently pending before our Supreme Court. *See Commonwealth v. Ludwig,* 7 WAP 2002 & 30 WAP 2002.

plaints was improper. Joinder is dealt with in the Rules of Criminal Procedure.

¶ 8 Rule 582 describes the standards by which separate informations may be tried together in the same trial:

(1) Offenses charged in separate indictments or informations may be tried together if:

(a) the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion; or

(b) the offenses charged are based on the same act or transaction.

Pa.R.Crim.P. 582(A)(1). The lower court relied on the second prong of the test: that the offenses charged in the complaints numbered 463 and 214 were the result of the same act or transaction.

■■■ ¶ 9 Consolidation of separate informations is an issue that rests in the sound discretion of the trial court. We will not overturn the trial court's decision absent "manifest abuse of discretion or prejudice and clear injustice to the defendant." *Commonwealth v. Boyd*, 315 Pa.Super. 308, 461 A.2d 1294, 1298 (1983) (citations omitted). "[D]enial of a motion for severance is proper only if (1) the facts and elements of the two crimes are easily separable in the minds of the jurors, and (2) the crimes are such that the fact of commission of each crime would be admissible as evidence in a separate trial for the other." *Id.*

Where the defendant moves to sever offenses not based on the same act or transaction that have been consolidated in a single indictment or information, or opposes joinder of separate indictments or informations, the court must therefore determine: [1] whether the evidence of each of the offenses would be admissible in a separate trial for the other; [2] whether such evidence is ca-

pable of separation by the jury so as to avoid danger of confusion; and, if the answers to these inquiries are in the affirmative, [3] whether the defendant will be unduly prejudiced by the consolidation of offenses.

*Commonwealth v. Lauro*, 819 A.2d 100, 107 (Pa.Super.2003) (quoting *Commonwealth v. Collins*, 550 Pa. 46, 703 A.2d 418, 422 (1997)).

■■ ¶ 10 We believe that the evidence of each of the crimes is easily separable. Accordingly, we must determine whether the evidence of the crimes in one complaint is admissible in a trial for the crimes in the other complaint.

Generally, evidence of other crimes is independently admissible in a trial for a distinct crime to prove (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing commission of two or more crimes so related to each other that proof of one tends to prove the others; or (5) identity, where there is such a logical connection between the crimes that proof of the extraneous crime naturally tends to show that the accused committed the crime he is charged with.

*Boyd*, 461 A.2d at 1298–99 (citations omitted). The trial court clearly decided that the two crimes were linked by a common scheme or plan and intent. Appellant had been Dunkleberger's supplier in the past and routinely obtained his drugs from a contact in Reading. We agree with the trial court that these crimes were linked, and evidence of the crimes charged in complaint number 463 would be admissible in a separate trial for the crimes charged in complaint number 214, and vice versa. Accordingly, we believe that appellant was not unduly prejudiced by the joinder of the two complaints for trial.

## IS THE DEATH BY DRUG DELIVERY STATUTE CONSTITUTIONAL?

¶ 11 Appellant's second argument centers on the constitutionality of the death by drug delivery statute. Notwithstanding the pending appeal in our Supreme Court, we find that this statute is constitutional.

¶ 12 Appellant argues that the statute is void for vagueness because it lacks a specific mental state. The statute indicates that a death resulting from a drug delivery is "murder in the third degree." 18 Pa. C.S.A. § 2506(a). While the lower court did not directly address this issue in its § 1925 opinion, we believe that the statute sufficiently provides a mental state by means of reference to the crime of murder in the third degree. The common law mental state of malice is incorporated in the crime of murder in the third degree. *Commonwealth v. McGuire*, 487 Pa. 208, 409 A.2d 313, 315–16 (1979). Therefore, we believe that the statute is not void for vagueness.[3]

## DID THE TRIAL COURT GIVE AN IMPROPER JURY CHARGE?

¶ 13 Appellant next claims that the lower court changed the information when it charged the jury. He claims that it made Thomas Kirchoff an accomplice and a co-conspirator.

¶ 14 The court may permit the amendment of an information, but only if "there is a defect in form, the description of the offense(s), the description of any person or any property, or the date charged, provided the information as amended does not charge an additional or different offense." Pa.R.Crim.P. 564. "When new or different elements beyond those in the information are introduced, the variance is improper." *Commonwealth v. Holcomb*, 508 Pa. 425, 498 A.2d 833, 847–849 (1985) (overruled on different grounds as stated in *Commonwealth v. Fears*, 575 Pa. 281, 836 A.2d 52, 69 (2003); and *Commonwealth v. Rice*, 568 Pa. 182, 795 A.2d 340 (2002)).

¶ 15 Appellant references two different sections within the jury charge. When the court instructed the jury on the crime of conspiracy, the court stated: "it is alleged that the following actions were overt: That there was receipt of purchase money in this case from Shurock and Hepner. That there was travel to Reading, and that there was furnishing of heroin, at least to Mr. Kirchoff." N.T., 3/23/01, at 794. This charge did not make Thomas Kirchoff a co-conspirator, as appellant suggests. This charge only stated that the delivery of heroin to Thomas Kirchoff was one possible overt act to the conspiracy between appellant and Hynes. This did not change the information.

¶ 16 The second contentious jury charge regards Thomas Kirchoff and occurred during the court's charge on accomplice testimony. The court instructed the jury on the law of accomplice testimony, and stated that Thomas Kirchoff was an accomplice. Appellant argues that this changes the information. This contention is without merit.

## DID THE TRIAL COURT IMPROPERLY DENY A CHANGE OF VENUE REQUEST?

¶ 17 The next issue is whether the lower court properly denied appellant's motion for a change of venue. Appellant

---

**3.** We note that *Commonwealth v. Highhawk*, 455 Pa.Super. 186, 687 A.2d 1123 (1996), held section 2506 void for vagueness and therefore unconstitutional due to a conflict between subsection (a) and subsection (c). The legislature subsequently deleted subsection (c), which removed the conflict that caused us to declare the statute unconstitutional.

contends that various articles published in a local newspaper prejudiced his client.

¶ 18 The factors for determining whether a change of venue based on pretrial publicity should be granted are well established.

The mere existence of pretrial publicity does not warrant a presumption of prejudice. If pretrial publicity occurred, its nature and effect on the community must be considered. Factors to consider are whether the publicity was sensational, inflammatory, and slanted toward conviction rather than factual and objective; whether the publicity revealed the accused's prior criminal record, if any; whether it referred to confessions, admissions, or reenactments of the crime by the accused; and whether such information is the product of reports by the police or prosecuting officers. If any of these factors exists, the publicity is deemed to be inherently prejudicial, and we must inquire whether the publicity has been so extensive, so sustained, and so pervasive that the community must be deemed to have been saturated with it. Finally, even if there has been inherently prejudicial publicity which has saturated the community, no change of venue [or venire] is warranted if the passage of time has significantly dissipated the prejudicial effects of the publicity.

*Commonwealth v. Bomar*, 573 Pa. 426, 826 A.2d 831, 858 (citations omitted) (citing *Commonwealth v. Chambers*, 546 Pa. 370, 685 A.2d 96, 104 (1996)).

¶ 19 Appellant specifically points to a series of articles under the title "Heroin Hits Home," which ran a few weeks before appellant's trial began. According to ap-

pellant's brief (the articles were not included in the certified record[4]), the death of Michael Moyer is discussed. Appellant, however, failed to point us to any article or story that contained any information about appellant or appellant's connection to Moyer's death. Therefore, we agree with the trial court and conclude that the denial of appellant's request for a change of venue was proper.

## WERE APPELLANT'S CONVICTIONS SUPPORTED BY SUFFICIENT EVIDENCE?

¶ 20 In points V and VI, appellant claims that his convictions for death by drug delivery, delivery of a controlled substance, possession of a controlled substance with intent to deliver, and conspiracy were against the sufficiency of the evidence.

¶ 21 The standard of review for sufficiency of the evidence claims is well settled:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and in-

4. On this point alone we could find appellant's point III waived. *See* Pa.R.A.P.1911(a); *Commonwealth v. Gillen*, 798 A.2d 225, 229 (Pa.Super.2002); *Commonwealth v. Griffin*, 804 A.2d 1, 12 (Pa.Super.2002); *Common-*

*wealth v. Williams*, 552 Pa. 451, 715 A.2d 1101, 1103–04 (1998); and *Commonwealth v. Bracalielly*, 540 Pa. 460, 658 A.2d 755, 763 (1995).

conclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proof or proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all the evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Lehman,* 820 A.2d 766, 772 (Pa.Super.2003) (citations omitted).

¶ 22 Appellant first argues in point V that there was insufficient evidence of malice for the death by drug delivery charge. Appellant cites *Commonwealth v. Bowden,* 456 Pa. 278, 309 A.2d 714 (1973), to support his contention. *Bowden* stated that there was no malice when Bowden knew the victim was a heroin addict, knew the victim's usual dosage of heroin, and injected the victim with heroin. *Bowden* differs from the instant case. Primarily, appellant was not Moyer's friend. Also, appellant was not even present when Moyer took the drug. Therefore, appellant cannot claim that a death is unforeseeable when he does not know the victim and his usual dose. In *Bowden,* "death was less foreseeable ... because, Inter alia, the accused knew the victim's normal dosage." *United States v. Mazur,* 8 M.J. 513, 515 (U.S. Army C.M.R.1979) (citing *Bowden* ). The sale of the drugs to Dunkleberger shows a reckless disregard for the foresee-

able consequences that someone might die as a result of consuming the very drugs sold.[5] *See McGuire,* 409 A.2d at 316. Accordingly, we believe there was sufficient evidence to support appellant's conviction for death by drug delivery.

¶ 23 Appellant continues to argue in point VI that the charges of delivery of a controlled substance (to Thomas Kirchoff), possession with intent to deliver, and conspiracy were against the weight and sufficiency of the evidence. Appellant based his argument on the fact that he did not immediately return to Shamokin after obtaining the drugs in Reading. We find no merit in appellant's contentions.

¶ 24 The Commonwealth presented sufficient evidence to establish these crimes. The crime of delivery was completed upon appellant's delivery of the heroin to Thomas Kirchoff. Appellant completed the conspiracy in Shamokin when he agreed to travel to Reading to purchase the drugs. The receipt of the money and the trip to Reading were sufficient overt acts in furtherance of that conspiracy. Finally, appellant's possession of the drugs as a result of his purchase in Reading provided sufficient evidence for the crime of possession with intent to deliver.

¶ 25 Appellant further contends that his convictions for delivery, possession, and conspiracy were against the weight of the evidence. Appellant provides a scant discussion on how these convictions were against the weight of the evidence. We therefore find his weight of the evidence claim in point VI waived.

---

**5.** We note that the lower court never charged the jury on the issue of malice.

[You, the jury, must prove f]irst, that the defendant administered, dispensed, delivered, gave, prescribed, sold, or distributed a controlled substance. . . .

Second, that another person died as a result of the use of this controlled substance.

N.T., 3/23/01, at 788. The lower court's instruction makes the crime of death by drug delivery a strict liability offense because the court did not instruct the jury on any mental state. Appellant, however, did not raise this issue in his brief.

## WAS APPELLANT'S CONVICTION FOR DEATH BY DRUG DELIVERY AGAINST THE WEIGHT OF THE EVIDENCE?

■ ¶ 26 Appellant next contends that his conviction for death by drug delivery was against the weight of the evidence because the pathologist's testimony did not conclusively indicate that Michael Moyer died from heroin.

■ ¶ 27 Our standard for weight of the evidence claims is well-settled:

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Champney,* 574 Pa. 435, 832 A.2d 403, 408 (2003) (citations and internal quotation marks omitted).

¶ 28 Michael Moyer's cause of death was described as "acute mixed drug intoxication." The pathologist testified that morphine, marijuana, and alcohol, but not heroin, were found in Michael Moyer's system. The pathologist further testified that the levels of marijuana and alcohol present in Moyer's body were not lethal levels. Also, morphine is typically found when death is caused by a heroin overdose because heroin is a derivative of morphine and heroin breaks down into morphine once it enters the body.

> [I]t is very rare to find heroin in anyone who has died as the result of a heroin overdose, because it is broken down so quickly in the body. But the morphine has what we call a much longer half life in the system. And in testing the morphine levels, which is what is usually detected in cases of heroin overdose.

N.T., 3/23/01, at 275. The fact that morphine is typically found in cases of a heroin overdose, combined with the fact that Dunkleberger purchased heroin from appellant for Moyer and the fact that Daniel Merrill testified that he injected Moyer with the heroin, could lead a reasonable fact finder to conclude that Moyer died as the result of a heroin overdose. We therefore believe that appellant's conviction was not against the weight of the evidence.

## DID THE TRIAL COURT ERR WHEN IT DENIED APPELLANT'S MOTION FOR A MISTRIAL?

■ ¶ 29 In point VIII, appellant challenges the trial court's decision not to grant a mistrial after the jury saw a transcript of appellant's preliminary hearing. For the court to grant a mistrial, a petitioner must demonstrate prejudice. Pa. R.Crim.P. 605(B). Appellant has not demonstrated prejudice.

¶ 30 A transcript of a preliminary hearing [6] was inadvertently sent to the jury room during deliberations. The transcript was used at trial as an exhibit, but was never admitted into evidence. Upon learning of this mistake, the trial court immediately removed the transcript from the jury room and gave the jury a curative instruction stating that they may not consider the

---

**6.** We note that this transcript is a transcript of a preliminary hearing, and not a trial. A *trial* transcript is absolutely prohibited from being provided to the jury. Pa.R.Crim.P. 646(B)(1).

transcript. Also, the jury foreperson stated that, although they looked at the transcript while it was in their possession, they determined that the testimony was "pretty much ... what we heard in Court. There was nothing different." N.T., 3/23/01, at 818. Accordingly, appellant failed to show that he was prejudiced by the jury's brief examination of the preliminary hearing transcript.

## WAS THE CLOSING STATEMENT BY THE COMMONWEALTH INFLAMMATORY AND PREJUDICIAL?

¶ 31 Appellant next argues that the prosecutor's closing remarks were inflammatory and prejudicial.

> The standard for granting a new trial because of the comments of a prosecutor is a high one. Generally, a prosecutor's arguments to the jury are not a basis for the granting of a new trial unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility towards the accused which would prevent them from properly weighing the evidence and rendering a true verdict. This standard permits us to grant a new trial based on the comments of a prosecutor only if the unavoidable effect of the comments prevented the jury from considering the evidence. A prosecutor must have reasonable latitude in fairly presenting a case to the jury and must be free to present his or her arguments with logical force and vigor.

*Commonwealth v. Ogrod,* 576 Pa. 412, 839 A.2d 294, 333–34 (2003) (citations and quotation marks omitted).

¶ 32 During closing arguments, the Commonwealth stated that appellant was from Iran, and that if this case were brought in Iran, "we wouldn't have 12 of you up here having to judge him. He

would have been judged a long time ago." N.T., 3/23/01, at 770. Appellant, immediately after this statement, objected, and the trial court sustained the objection.[7] Appellant did not, however, request a curative instruction. Regardless of these facts, we note that the statement *in context* only indicated that appellant was afforded the opportunities and protections of the United States judicial system, and that these protections would not have been available to appellant had this case arisen in appellant's home country. In context, the Commonwealth did not comment on the guilt of appellant. *See Commonwealth v. Weiss,* 565 Pa. 504, 776 A.2d 958, 968 (2001) ("In order to evaluate whether the comments were improper, we do not look at the comments in a vacuum; rather we must look at them in the context in which they were made."). Accordingly, the comment did not prejudice the jury.

## DID THE TRIAL COURT ERR WHEN IT DENIED APPELLANT'S MOTION TO SUPPRESS EVIDENCE OBTAINED FROM A WARRANTLESS SEARCH OF APPELLANT'S VEHICLE?

¶ 33 Appellant finally argues that the lower court incorrectly denied his motion to suppress the evidence obtained from his vehicle when he was stopped in Ralpho Township. On December 1, 1999, the police obtained a warrant to search appellant's vehicle. The face of the warrant requested surveillance of appellant and an anticipatory search warrant that allowed the police to execute the vehicle search the next day, immediately upon appellant's return to Shamokin from Reading. Unfortunately, appellant veered off the path and began traveling towards Elysburg. Fearful that appellant was go-

---

7. The trial court's rationale for sustaining appellant's objection was that no evidence exist-

ed concerning Iran or Iran's criminal justice system.

ing to sell some of the drugs he had purchased in Reading, the police, who had been following appellant throughout the day, decided to stop and search the vehicle. Because the facts noted in the anticipatory warrant were not fulfilled (*i.e.*, appellant never returned to Shamokin), the warrant was no longer valid. Therefore, the police conducted a warrantless search of appellant's vehicle. The question now is whether this warrantless search was permissible. We believe it was.

■ ¶ 34 To justify a warrantless search of a vehicle, the police must have probable cause and exigent circumstances. *Commonwealth v. Luv,* 557 Pa. 570, 735 A.2d 87, 93 (1999). In *Luv,* our Supreme Court found that both were present.

> In *Luv,* officers obtained a search warrant for defendant's home. Defendant then left his home and went to his girlfriend's home, where he parked his car. Officers suspected that there were drugs in defendant's car and attempted to get a new search warrant for defendant's car. Before they could do so, however, defendant drove away. Believing that defendant was on his way to sell the drugs contained in the car, the officers stopped him before they could get a new warrant.

*Commonwealth v. Casanova,* 748 A.2d 207, 211–12 (Pa.Super.2000) (citations to *Luv* omitted). We have before us an almost identical situation. Officers obtained a warrant, which later became ineffective. Worried that appellant would sell some of the drugs he purchased in Reading, the officers stopped appellant's car and searched it. These facts, and the statements of the reliable confidential informants (Kelly Hepner and Robert Shurock), allow us to conclude that there existed sufficient probable cause and exigent circumstances to justify the warrantless search of the vehicle.

## CONCLUSION

¶ 35 After carefully considering each of appellant's arguments, we affirm appellant's judgment of sentence.

¶ 36 Judgment of sentence AFFIRMED.