**Commonwealth v. Lacoot**

*Susan Moyer, assistant district attorney,* for Commonwealth.

*MaryJean Glick, senior assistant public defender,* for defendant.

ASHWORTH, *J.,* March 31, 2009—Edwin Lacoot has filed a direct appeal to the Superior Court of Pennsylvania from his judgment of sentence imposed on January 15, 2009. This opinion is written pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure.

# I. BACKGROUND

At the conclusion of a jury trial, appellant was found guilty of delivery of a controlled substance and criminal conspiracy to deliver a controlled substance.[1] The basis for appellant's conviction was a marijuana delivery to an undercover police officer in a drug-free school zone on Dauphin Street in the City of Lancaster on July 9, 2008. See 18 Pa.C.S. §6317. Appellant waived his right to a presentence investigation report and immediately stood for sentencing.

Appellant received a sentence of two to four years incarceration on the delivery charge and a concurrent sentence of 18 to 36 months on the conspiracy charge. The sentence for the delivery charge was a mandatory minimum as required by the Pennsylvania Sentencing Guidelines for offenses taking place in a drug-free school zone. Appellant was represented at his trial and sentencing by the Lancaster County Public Defender's Office, specifically, Patricia Spotts, Esquire.

Appellant did not file any post-sentence motions, but did file a timely appeal to the Superior Court of Pennsylvania. Pursuant to this court's directive, appellant filed a Rule 1925(b) statement which raises four issues: (1) whether the court erred in refusing to instruct the jury that it should find appellant did not commit the offenses of delivery of marijuana and criminal conspiracy to deliver marijuana if it found that he was merely an agent of the buyer, and not of the seller; (2) whether the court

---

1. 35 P.S. §780-113(a)(30) and 18 Pa.C.S. §903(a)(1), respectively.

erred in instructing the jury as requested in Common-
wealth's proposed points for charge 3 and 4; (3) wheth-
er the evidence was insufficient to convict appellant of
delivery of marijuana and criminal conspiracy; and (4)
whether the court erred in denying defense counsel's
motion for mistrial, based on the prosecutor's improper
reference to appellant's failure to testify; or alterna-
tively, whether the court erred in failing to offer a cura-
tive instruction, cautioning the jury that it could not
consider appellant's failure to testify in reaching its ver-
dict.[2] The Commonwealth filed a response to appellant's
statement of errors on March 24, 2009.

## II. DISCUSSION

### A. *Sufficiency of the Evidence*

Appellant contends the evidence was insufficient to
support his conviction of delivery of marijuana and
criminal conspiracy to deliver marijuana. When review-
ing a sufficiency claim, the appellate court employs the
following standard of review:

"[W]hether viewing all the evidence admitted at trial
in the light most favorable to the verdict winner, there is
sufficient evidence to enable the fact-finder to find every
element of the crime beyond a reasonable doubt. In ap-
plying the above test, we may not weigh the evidence
and substitute our judgment for the fact-finder. In addi-
tion, we note that the facts and circumstances established

---

2. Appellant filed a timely statement of errors on March 9, 2009,
which averred three trial court errors. On March 10, 2009, appellant
filed a motion for leave to file an amended statement, which I grant-
ed.

by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence." *Commonwealth v. Nahavandian,* 849 A.2d 1221, 1229-30 (Pa. Super. 2004). (citations omitted)

The evidence admitted at trial, along with all reasonable inferences that may be drawn from that evidence, viewed in the light most favorable to the Commonwealth as the verdict winner, is as follows. On July 9, 2008, Carlos M. Luciano Jr., a Lancaster City Police Officer assigned to the Selective Enforcement Unit, was conducting undercover narcotics operations in a high crime area in the city. (N.T., vol. I at 88-89, 91.) Specifically, Officer Luciano was involved in a "bust-buy" detail in the southwest quadrant of the city. (*Id.* at 92; vol. II at 188-90.) He was driving a rental car in the 300 block of South Queen Street at approximately 8 p.m. when he noticed appellant on the sidewalk and gave him a head nod. (*Id.* at 97-98.) Appellant approached the vehicle as it was stopped at a light and Officer Luciano pointed ahead to indicate that he would pull over after he got through the light. (*Id.* at 99-100.)

Officer Luciano stopped his vehicle in the 200 block of South Queen Street and appellant walked up to the driver's side window. (N.T., vol. I at 100.) Officer Luciano asked appellant "[i]f [he] could get hooked up for 20 for crack or weed or hard" (*i.e.,* crack cocaine). (*Id.* at 100-101.) Appellant responded that he could hook him up and proceeded to get into the front seat of the vehicle. (*Id.* at 100.) Appellant directed Officer Luciano through the city until they arrived at the intersection of South Ann and Dauphin Streets, and he parked on the southwest corner of South Ann Street facing south. (*Id.* at 102.)

Officer Luciano handed appellant a prerecorded, marked $20 bill (N.T., vol. I at 96; vol. II at 153-54, 191, 198), and appellant exited the vehicle. (*Id.* at 102.) Appellant walked in a southerly direction approximately 25 to 30 feet down the sidewalk, directly in front of Officer Luciano's vehicle, to a group of people sitting on a porch. (*Id.* at 102, 104, 105.) While Officer Luciano could hear a conversation coming from the porch, he could not decipher what was being said. *(Id.)*

Appellant then turned from the porch, walked past Officer Luciano's vehicle and proceeded in a northerly direction on South Ann Street back towards the intersection. (N.T., vol. I at 102-103, 105.) Officer Luciano followed appellant in his rearview mirror. (*Id.* at 103.) Right at the southwest corner of Dauphin and South Ann Streets, Officer Luciano observed appellant make contact with a tall, slender, Hispanic male (later identified as Angel Perez). (*Id.* at 105-106.) Appellant was observed handing the $20 bill to the other man and receiving some

items which the other man had retrieved from his right front pants pocket. (*Id.* at 106.)

Appellant approached the passenger side window of Officer Luciano's vehicle and, with the same hand that had received the items from the Hispanic man, handed two baggies of suspected marijuana to Officer Luciano.[3] (N.T., vol. I at 106-107; Commonwealth exhibit no. 1.) Appellant asked Officer Luciano if he was still interested in getting some crack cocaine, to which the officer responded that he was. (*Id.* at 109.) Officer Luciano gave appellant four prerecorded, marked $5 bills for the purchase. (*Id.,* vol. II at 191-93, 198; Commonwealth exhibit nos. 3, 4.)

Appellant walked away from the vehicle, heading west on Dauphin Street. (N.T., vol. I at 110.) Shortly thereafter, appellant returned and re-entered the vehicle. Officer Luciano drove south on South Ann Street to the next intersection, which is Juniata Street. (*Id.* at 113, 114.) After Officer Luciano pulled the vehicle over, appellant exited the vehicle and Officer Luciano left the area. (*Id.* at 113, 115.)

Immediately, other members of the Selective Enforcement Unit moved in and arrested appellant and Perez. (N.T., vol. I at 113, 115; vol. II at 166, 205, 217-19, 229-30.) When appellant was arrested, he had the four marked $5 bills in his possession. (N.T., vol. II at 220, 241.) Perez had a small baggie of marijuana on him when he was arrested. (*Id.* at 239; defendant's exhibit no. 12.)

---

3. The substance in the bags was later positively identified as marijuana based on chemical testing. (N.T., vol. II at 244.)

During this entire episode, Officer Luciano was wearing a wire and transmitting information to other undercover surveillance officers involved in the detail. (N.T., vol. I at 95, 111-12; vol. II at 124-32.)

Due to his participation in the above-described drug transaction, appellant was charged with, and ultimately convicted of, the offense of delivery of a controlled substance, as well as the offense of conspiracy to deliver a controlled substance. Appellant now claims the evidence was insufficient to convict on these charges, "where [appellant] had no interest in whether Mr. Perez made a sale to Officer Luciano. At best, [appellant] assisted the buyer in purchasing marijuana but did not deliver, or conspire to deliver, marijuana to Officer Luciano." (See statement of errors at ¶3.)

The offense of delivery of a controlled substance is provided for in section 780-113(a)(30) of The Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. §§780-101—780-144. According to that section, the following act is prohibited:

"the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate state board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance." 35 P.S. §780-113(a)(30).

Thus, for a defendant to be liable as a principal for the delivery of a controlled substance there must be evidence that he knowingly made an actual, constructive, or attempted delivery of a controlled substance to another

person without the legal authority to do so. See *Commonwealth v. Murphy,* 577 Pa. 275, 285, 844 A.2d 1228, 1234 (2004).

Appellant claims the evidence failed to show a "delivery" under the Act. "Delivery" is defined as "the actual, constructive or attempted *transfer* from one person to another of a controlled substance . . . whether or not there is an agency relationship." 35 PS. §780-102. (emphasis added) As noted by our Superior Court in *Commonwealth v. Cameron,* 247 Pa. Super. 435, 372 A.2d 904 (1977): "Transfer is not defined in the Act; however, taking the commonly accepted meaning of the word, as we must . . . it means '[t]o convey or remove from one . . . person to another; pass or hand over from one to another.'" *Id.* at 440, 372 A.2d at 907 (citing Black's Law Dictionary, at 1669 (rev. 4th ed. 1968)). (citations omitted) Thus, "all that is necessary is that the *transfer* be between two people." *Commonwealth v. Metzger,* 247 Pa. Super. 226, 230, 372 A.2d 20, 22 (1977). (emphasis added)

Here, appellant tried to have the court read into these sections the elements of a "sale." In other words, appellant contends that if he, who acted solely as the agent of the buyer (*i.e.,* Officer Luciano), did not profit from his delivery, then he could not be guilty of the crime. In her opening statement to the jury, defense counsel introduced this "buyer's agent" defense, that is, that appellant was simply getting drugs for his "friend"[4] and that he got

---

4. Appellant was a complete stranger to Officer Luciano. He had never seen him before or had any prior dealings with him. (N.T., vol. I at 98, 107.) And yet, defense counsel contends that because they were

nothing out of the transaction. She stated: "I believe the evidence is going to show that even if you accept that [appellant] gave Officer Luciano the drugs, he was not acting in the capacity as a drug dealer. He was acting in the capacity as a friend of Carlos Luciano who wanted to get drugs." (N.T., vol. I at 83.) She concluded with the statement that "the judge will instruct you at the close of the evidence that if, in fact, it's just a friend acting on behalf of a friend, that's not what the law considers a delivery." (*Id.* at 86.)

Defense counsel repeated this theme during her closing argument to the jury:

"What [Officer Luciano] did is engage and entice and encourage [appellant] to do him a favor, act on his behalf, to buy him drugs. [Appellant] didn't ask for anything in return. [Appellant] didn't say, are you going to give me drugs? Are you going to give me money? He didn't ask for anything in return. . . . Would the *sale* of marijuana have occurred if the police had not done what they done [sic] that night?" (N.T., vol. II at 255.) (emphasis added)

And later she restates: "[Appellant] gets out of the car again to try and get Officer Luciano what he is asking for. Not for himself. Not because he wants to benefit himself. Because he was helping out a friend." (N.T., vol. II at 257.)

---

both, allegedly, drug addicts, they became immediate "friends" after a "bob of the head" because of their mutual "loneliness" and need for illegal narcotics. (N.T., vol. I at 83-85; vol. II at 254-57, 257.)

When arguing this "buyer's agent" defense to the court during the trial in this matter, appellant relied upon *Commonwealth v. Simione,* 447 Pa. 473, 291 A.2d 764 (1972), and *Commonwealth v. Flowers,* 479 Pa. 153, 387 A.2d 1268 (1978), as support for his contention. *Simione* is inapposite, however, because, in that case, the defendant was charged with the *sale* of heroin.[5] The court held that "one who acts solely as the agent of the buyer cannot be convicted of a *'sale'* of an unlawful drug." *Simione, supra* at 479, 291 A.2d at 767-68. (emphasis added) Similarly, in *Flowers,* the Supreme Court noted that "one who has acted without interest in the *selling* cannot be convicted as a *seller* even though his conduct may in fact have facilitated the illegal *sale.*"[6] *Flowers, supra* at 161,

---

5. *Simione* dealt with the specific issue of whether an individual who sets up a sale of narcotics on behalf of a particular buyer could be prosecuted as a "seller" of narcotics. In *Simione* an undercover officer persuaded the defendant to arrange a sale of hashish through a third party. The defendant arranged for the transaction to take place in the kitchen of his apartment. When all three men were present, the undercover officer gave the money to the defendant who then received the hashish and change from the third party and returned both to the officer. The court noted that the defendant was a mere conduit by which the exchange was made and the defendant did not realize any profit from the transaction. 447 Pa. at 480, 291 A.2d at 768.

6. In *Flowers,* the defendant was approached by an undercover officer and asked if he had any drugs. The defendant answered that he did not. A few minutes later a third party, George Shiner, approached the defendant, and the defendant called the officer over and introduced him to Shiner, indicating that Shiner had some marijuana. All three individuals went together in the officer's vehicle to Shiner's residence, where they were joined by a fourth person, John Dustin, who brought with him a supply of marijuana. Dustin passed the marijuana to Shiner, who in turn passed it to the officer. The officer passed the money back to Dustin through Shiner. The defendant was present throughout the transaction, but did not handle either drugs or money,

387 A.2d. at 1273 (quoting *United States v. Moses,* 220 F.2d 166, 169 (3d Cir.1955)). (emphasis added) The statute regulating controlled substances at the time of *Flowers* and *Simione* were decided specifically stated that the *sale* of a controlled substance constituted the crime.

The instant case involves the "delivery" of a controlled substance, not the "sale" of a controlled substance. The section of the present Act of 1972, under which appellant was charged, does not include the *sale* of a controlled substance within its text.[7] Thus, the actual sale, *i.e.,* an exchange of money or some other arrangement of barter, of a controlled substance is no longer a specifically prohibited act under the charged section of the Act. The offensive conduct is simply the "actual, constructive or

---

did not participate in the negotiations, nor did he receive any compensation for his role. The officer's testimony established no participation other than the original introduction of the officer to Shiner. The defendant was convicted for his participation in the sale of the marijuana. On appeal, the Supreme Court found that the evidence was insufficient to sustain the defendant's conviction as either a principal or an accessory before the fact to the "felony of selling a controlled substance." 479 Pa. at 155, 387 A.2d at 1270. In its analysis the court discussed the fact that the defendant was acting as an agent for the buyer. Relying on the decision in *Simione, supra,* the court reasoned that since the defendant was an agent of the buyer who received no proceeds from the sale he could not be held criminally responsible for the *sale* of the marijuana. *Id.* at 159-60, 387 A.2d at 1272. The court found that the defendant was quite literally "along for the ride" when the transaction took place between third parties. See *Commonwealth v. Murphy,* 795 A.2d 1025, 1036-37 (Pa. Super. 2002).

7. The present Act of 1972 specifically repealed the Drug, Device and Cosmetic Act of September 26, 1961, 35 P.S. §780-1 et seq., wherein the word "sale" was part of the definition of the crime. See 35 P.S. §780-4 (repealed).

attempted transfer from one person to another" of the prohibited substance. See *Metzger, supra* at 230, 372 A.2d at 22.[8] See also, *Commonwealth v. Jones,* 402 Pa. Super. 135, 586 A.2d 433 (1991).

In a direct reference to *Flowers,* defense counsel suggests in her closing argument that appellant's participation in the drug transaction was merely as a "ride-along." (N.T., vol. II at 259.) However, the evidence is contrary. Here, once appellant was aware of what Officer Luciano wanted (illegal narcotics), he chose to accommodate the officer by jumping in his car and directing him through the city, actively seeking out his dealer and then facilitating the transaction between the officer and the dealer by physically transferring the drugs and the buy-money. This evidence clearly established that appellant was not merely a passive participant simply "along for the ride" as the appellant was in *Flowers.* Nonetheless, as an agency relationship with the seller is not required for a person to be liable for the delivery of drugs, see 35 P.S. §780-113(a)(30), a defendant may be liable as a principal for delivering drugs even if he physically conveyed drugs to a drug buyer solely on the buyer's behalf. See *Murphy, supra* at 285 n.9, 844 A.2d at 1234 n.9.

---

8. In *Metzger,* the defendant picked up some LSD for his brother, who sold it to an undercover police officer. He argued that he was not guilty of delivery because he had received no money himself but had only acted as an "errand boy." The court rejected the argument, pointing out that by his "own testimony he acknowledged that he purchased the drugs and transferred them to his brother who made the ultimate sale to the agent." *Metzger, supra* at 230, 372 A.2d at 22. "The offensive conduct," the court said, was the transfer "of the prohibited substance." *Id.*

In the instant case, because there is evidence that appellant physically transferred the drugs to Officer Luciano, the evidence was sufficient to convict appellant of *delivery* of a controlled substance.

Appellant was also found guilty of criminal conspiracy to deliver an illegal substance.[9] To sustain a conviction for criminal conspiracy, the Commonwealth must establish that the defendant (1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and (3) an overt act was done in furtherance of the conspiracy. *Commonwealth v. McCall,* 911 A.2d 992, 996 (Pa. Super. 2006). An explicit or formal agreement to commit crimes can seldom, if ever, be proved, but a conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators sufficiently prove the formation of a criminal confederation. *Commonwealth v. Perez,* 931 A.2d 703, 708-709 (Pa. Super. 2007); *Commonwealth v. Jones,* 874 A.2d 108, 121-22 (Pa. Super. 2005).

---

9. Section 903 of the Pennsylvania Crimes Code provides:

"A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he: (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime." 18 Pa.C.S. §903.

The Pennsylvania Superior Court has identified four factors to be considered in determining the sufficiency of the evidence supporting the existence of a conspiracy. These factors are: "(1) an association between alleged conspirators; (2) knowledge of the commission of the crime; (3) presence at the scene of the crime; and (4) in some situations, participation in the object of the conspiracy." *Commonwealth v. Lambert,* 795 A.2d 1010, 1016 (Pa. Super. 2002). The presence of these four circumstances "may furnish a web of evidence linking an accused to an alleged conspiracy beyond a reasonable doubt when viewed in conjunction with each other and in the context in which they occurred." *Id.* See also, *Perez, supra* at 708.

The totality of the evidence taken in a light most favorable to the Commonwealth, as set forth above, was sufficient to sustain appellant's conviction for conspiracy to deliver. Once appellant was aware of what Officer Luciano wanted, and after deciding to aid the officer, he actively sought out his dealer, Angel Perez, and then facilitated the transaction between the officer and Perez by physically transferring the drugs and the buy-money. This evidence establishes that appellant was not merely a passive participant but took an active role in the illicit enterprise. "It was thus appropriate for the fact-finder to infer an agreement between appellant and his cohort to deliver [marijuana] based upon appellant's participation in the enterprise carrying out the deliveries." *McCall, supra* at 997.

Accordingly, all three elements to a criminal conspiracy were sufficiently proven to sustain appellant's conviction for conspiracy to deliver marijuana.

## B. *Jury Instructions*

Next, appellant claims the trial court erred in refusing to instruct the jury that it should find appellant did not commit the offenses of delivery of marijuana and criminal conspiracy to deliver marijuana if it found that he were merely an agent of the buyer, and not of the seller. For reasons set forth above, the "buyer's agent defense" was inapplicable as a matter of law to the charges and facts adduced at trial. "[A] trial judge may properly refuse to read points for charge submitted by defense counsel which do not reflect a proper articulation of the law of our Commonwealth." *Commonwealth v. Slyman,* 334 Pa. Super. 415, 433, 483 A.2d 519, 528 (1984) (citing *Commonwealth v. Strong,* 484 Pa. 303, 399 A.2d 88 (1979). As such, an instruction on the "buyer's agent defense" was not warranted and the court properly denied appellant's requested instruction based on that defense. See *Murphy, supra* (finding the trial court did not err in refusing to give the "buyer's agent defense" where the charged offenses and facts made it inapplicable).

Appellant further contends that the court erred in instructing the jury as requested in Commonwealth's proposed points for charge 3 and 4:

"Where a person obtains drugs from one person and delivers them to another, this action is a violation of the Drug Act despite the fact that the deliverer did not profit from his delivery. It is not necessary to show the exchange of money or any other type of barter to show a delivery of a controlled substance . . . occurred." (N.T., vol. II at 280.)

Appellant is again relying on the "buyer's agent defense" in his challenge to these instructions. However, as noted previously, appellant was charged with the "delivery" of a controlled substance, not the "sale" of a controlled substance. The section of the present Act of 1972, under which he was charged, does not include the sale of a controlled substance within its text. And yet appellant continues in his effort to read into that section the elements of a sale. "Under the present Act it is no longer necessary to establish that an exchange of money took place or some other arrangement of barter transpired. The offensive conduct is simply the 'actual, constructive or attempted transfer from one person to another' of the prohibited substance." *Metzger, supra* at 230, 372 A.2d at 22. See also, *Commonwealth v. Jones,* 402 Pa. Super. 135, 140-41, 586 A.2d 433, 436 (1991). The challenged jury instructions were accurate statements of the law; hence, there was not trial court error in instructing the jury as requested by the Commonwealth.

## C. *Motion for Mistrial*

Appellant argues the trial court erred in denying his request for a mistrial based on the prosecutor's statements during closing arguments regarding appellant's failure to testify. In her closing statement to the jury, the assistant district attorney noted: "The defense [attorney] in her opening talked about—and closing—talked about how the defendant is a drug user. There is no evidence of that on the record. We don't have anything about that. *He doesn't have to testify.* So all we know about the defendant is what we learned through the officers." (N.T., vol.

18

II at 262.) (emphasis added) At the close of the prosecutor's remarks, defense counsel requested a side-bar and moved for a mistrial based on the reference to the fact that appellant did not testify. (*Id.* at 270.) I denied the motion. (*Id.* at 271.)

It is well established that

"[a]s a general rule, any comment that the prosecuting attorney makes regarding a defendant's election not to testify is a violation of the defendant's right against self-incrimination as guaranteed by the Fifth Amendment of the United States Constitution, Article I, Section 9 of the Pennsylvania Constitution and by statute, codified at 42 Pa.C.S. §5941. . . . A comment is constitutionally and statutorily forbidden if the language used by the prosecutor is intended to create for the jury an adverse inference from the failure of the defendant to testify . . . . This rule is not an absolute bar to any reference to a defendant's failure to testify. . . . A remark by a prosecutor, otherwise improper, may be appropriate if it is in fair response to the argument and comment of defense counsel. *United States v. Robinson,* 485 U.S. 25, 31, 108 S.Ct. 864, 99 L.Ed.2d 23 (1988)." *Commonwealth v. Trivigno,* 561 Pa. 232, 243-44, 750 A.2d 243, 248-49 (2000). (internal quotations omitted; citations omitted; footnotes omitted) See also, *Commonwealth v. Wright,* 599 Pa. 270, 309-10, 961 A.2d 119, 141-42 (2008).

When we apply these rules of law to the facts of this case, it is clear that the prosecutor's remark at issue was in fair response to the statements of defense counsel and was not intended to create an adverse inference pertaining to the failure of appellant to testify. Here, defense

counsel's comments during her opening and closing arguments suggested that appellant was not a drug dealer or deliverer but simply a "drug addict," a "drug user," "someone who uses drugs." (See N.T., vol. I at 82-86; vol. II at 255, 257.) No such testimony had been presented at trial, however. In light of this contention, the comment of the assistant district attorney was intended to respond to counsel's representations, to remind the jury that it was the defense attorney, and not appellant, who gave them that information, and to inform the jury that they were limited in their knowledge of appellant to the testimony of the police officers.[10] (N.T., vol. II at 262.) The prosecutor did not intend to create for the jury an adverse inference from the failure of appellant to testify. Accordingly, the motion for mistrial was properly refused.

---

10. Case law supports our conclusion. See *Commonwealth v. Abu-Jamal,* 553 Pa. 485, 561, 720 A.2d 79, 116 (1998) (holding that prosecutor's comment during penalty hearing that defendant failed to present testimony as to any kind of emotional feelings was in fair response to defense mitigation argument that in shooting the victim defendant was acting under emotional disturbance); *Commonwealth v. Clark,* 551 Pa. 258, 276-77, 710 A.2d 31, 39-40 (1998) (holding that prosecutor's comment during penalty hearing that defendant failed to show remorse was in fair response to defense closing argument); *Commonwealth v. Rhone,* 422 Pa. Super. 521, 529, 619 A.2d 1080, 1082-83 (1993) (holding that prosecutor's comment during closing argument referring to defendant's failure to testify was fair response to reasons, not in evidence, offered by defense counsel as to why defendant's statements were inconsistent and to statement to jury that defendant meant it when he entered plea of not guilty); *Commonwealth v. Torres,* 329 Pa. Super. 58, 62, 477 A.2d 1350, 1352 (1984) (holding that defense counsel's opening statement that defendant was frightened, and that was why he fled, opened the door for prosecutor to state to jury that they did not hear that evidence from the defendant).

Even if the assistant district attorney's remark was not in fair response to the statements of defense counsel, but rather an erroneous comment on appellant's failure to testify, this error does not warrant a new trial because it was harmless. An improper reference to a defendant's failure to testify is harmless if the Commonwealth establishes, beyond a reasonable doubt, that "the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict." *Trivigno, supra* at 250, 750 A.2d at 246 (quoting *Commonwealth v. Rodriguez,* 533 Pa. 555, 560, 626 A.2d 141, 144 (1993)).

In the instant case, the properly admitted and uncontradicted evidence of appellant's guilt was overwhelming, and the comment of the assistant district attorney could not have, in any way, contributed to the jury's verdict against him. Given this, there is no reasonable doubt that the prosecutor's passing reference to the fact that appellant "doesn't have to testify" did not contribute to the jury's verdict in this matter.

Appellant argues, alternatively, that the court erred in failing to offer a curative instruction, cautioning the jury that it could not consider appellant's failure to testify in reaching its verdict. Defense counsel did not ask for a curative instruction, although the court instructed the jury generally on a defendant's right to remain silent:

"I remind you that it is entirely up to the defendant in a criminal trial whether or not to testify. He has an absolute right, founded upon the Constitution, to remain silent. You must not draw any inference of guilt or any

other inference adverse to the defendant from the fact that he chose not to testify in this case." (N.T., vol. II at 275-76.) This instruction was adequate to overcome any possible prejudice to appellant.

### III. CONCLUSION

For the reasons noted above, appellant's judgment of sentence should be affirmed and his appeal dismissed.

Accordingly, we enter the following:

### ORDER

And now, March 31, 2009, the court hereby submits the foregoing opinion pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure.